```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 21-20152 |
| | ) | |
| TRAVIS LESTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Travis Lester's December 8, 2021 Motion to Suppress (the "Motion"). (ECF No. 28.) The Government responded in opposition on January 14, 2022. (ECF No. 37.) On April 7, 2022, the Magistrate Judge issued his Amended Report and Recommendation (the "Report"), recommending that the Court deny the Motion. (ECF No. 52.) Lester objected on April 28, 2022. (ECF No. 55.) The Government responded on June 1, 2022. (ECF No. 60.) On June 15, 2022, Lester replied. (ECF No. 67.) For the following reasons, the Court ADOPTS the Report. The Motion is DENIED.

I.  **Background**[1]

In January 2021, U.S. Marshal Warrant Team Leader Deputy Trayon Murray was assigned an arrest warrant for Travis Lester. (ECF No. 52. at 1.)  The warrant sought Lester's arrest for violating the conditions of his federal supervised release. (Id. at 2.)  Deputy Murray was also assigned a state warrant issued for Lester on aggravated assault charges and a warrant issued for Shebrica Phillips. (Id.)  Phillips was Lester's girlfriend and was suspected of having participated in the alleged aggravated assault, which involved the use of a firearm. (Id.)  On May 19, 2021, a confidential informant told Deputy Murray that Phillips and Lester were staying at the Villa Inn Motel on Third Street in Memphis, Tennessee. (Id.)

Deputy Murray, along with a team of U.S. Marshals and members of the Shelby County Fugitive Team, drove to the Villa Inn to investigate.  Villa Inn staff told Deputy Murray that Phillips and Lester were staying in Room 110. (Id.)  Deputy Murray called other team members to assist with the arrest. (Id. at 3.)  The officers arrived at Room 110 and knocked and announced. (Id.)  Phillips opened the door after a minute or so. (Id.)  Lester stepped out of the door, and the officers

---

[1] The following facts are taken from the suppression hearing and the Report.  Lester's objections to certain facts are discussed in Section III.

2

grabbed him. (Id.) Deputy Murray noticed a plastic bag and bulge in Lester's front pocket. (Id. at 4.) He searched Lester's pockets and found a rock-like substance in the bag and a wad of cash. (Id.) Deputy Murray asked Lester if he had "anything else on [him], drugs or anything that will harm me, stick or harm me." (T. 45.) Lester said that there was "just some weed in the room." (T. 46.)

Meanwhile, officers entered Room 110 and apprehended Phillips. (ECF No. 52 at 4.) As Phillips was being handcuffed and taken out of the room, Detective Joshua Fox and Detective Crynor[2] conducted a safety sweep. (Id.) Room 110 was a typical motel room with a small open space and a bathroom adjoining the main area. (Id. at 2.) Crynor went past the bed, looked into the bathroom, and came out. (Id. at 4.) The sweep lasted only a few seconds. (Id. at 4-5.) During the sweep, Crynor saw a digital scale sitting on a nightstand. (Id. at 5.)

A narcotics team tested the rock-like substance found in Lester's pocket. The test returned a presumptive positive result for cocaine. (Id. at 6.) Detective Randy Lee applied for a search warrant to search Room 110 and wrote an affidavit in

---

[2] The Report identifies "Detective Crynor" as the officer, but the Magistrate Judge could not confirm his first name or the spelling of his last name.

support. (Id.) The affidavit listed three pieces of evidence: the digital scale, the bag of cocaine, and Lester's statement that there was some weed in the room. (Id.) The search warrant was executed within an hour, and Detective Lee and Detective Jaeger Zuck searched the room. (Id. at 6-7.) Detective Zuck took photographs as the search progressed. (Id. at 7.) The detectives found a handgun and a bag of a leafy green substance that appeared to be marijuana. (Id. at 8.) The gun was later determined to be stolen, the rock-like substance was confirmed to be 4.9 grams of cocaine, and the leafy green substance was confirmed to be .9 grams of marijuana. (Id.)

Lester was charged with being in possession of a firearm after having been convicted of a misdemeanor crime of domestic violence and of a felony, in violation of 18 U.S.C. §§ 992(g)(1) and (g)(9). (ECF No. 1.) On December 8, 2021, Lester filed the Motion. (ECF No. 28.) The Government responded on January 14, 2022. (ECF No. 37.) A suppression hearing (the "Hearing") was held on March 8, 2022. (ECF No. 49.) On April 7, 2022, the Magistrate Judge filed the Report. (ECF No. 52.) Lester objected on April 28, 2022. (ECF No. 55.) The Government responded on June 1, 2022. (ECF No. 60.) Lester replied on June 15, 2022. (ECF No. 67.)

4

**II.  Standard of Review**

A district judge reviews de novo any part of a magistrate judge's ruling on a motion to suppress that has been properly objected to.  28 U.S.C. § 636(b)(1);  see United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001).  After reviewing the evidence, the Court may accept, reject, or modify the proposed recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  A district court adopts the findings and rulings of the magistrate judge to which no objection is filed.  Thomas v. Arn, 474 U.S. 140, 150 (1985).

**III. Analysis**

    **A.    Objections to Proposed Findings of Fact**

Lester objects to four of the Magistrate Judge's proposed findings of fact:  (1) that Detective Fox's testimony about the protective sweep was credible;  (2) that Deputy Murray asked Lester whether "he had anything else on [him], drugs or anything that will harm me, stick or harm me";  (3)  that the Shelby County Sheriff's Department had a practice of not altering any settings or stored photos on its cameras;  and (4) that the timestamped photos indicated that the search began at some point after 2:22 p.m.  (ECF No. 55.)

5

### 1. The Credibility of Detective Fox's Testimony

Lester asks the Court not to credit Detective Fox's testimony about the protective sweep. Detective Fox testified that, when he and Detective Crynor went into the Room 110, they conducted a protective sweep that lasted a few seconds, not a search. (T. 83.) Lester argued at the Hearing that Detective Fox testified falsely and that Detectives Fox and Crynor searched the room during the purported sweep. The Magistrate Judge credited the testimony of Detective Fox and said in the Report that Lester had no evidence that a search of the room was conducted at that time.

Lester objects to the Magistrate Judge's finding that he had no evidence to support the claim that the protective sweep was in fact a search. In support, Lester argues that Deputy Murray testified that the search lasted a couple of minutes. (T. 65.) Lester contends that a protective sweep could not last a couple of minutes.

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." United States v. Monroe, 2018 WL 2074201, at *4 (W.D. Tenn. May 1, 2018) (citing United States v. Raddatz, 447 U.S. 667, 675-76

6

(1980)). A magistrate judge's assessment of a witness's testimony is generally entitled to deference. United States v. Akins, 2011 WL 2536697, at *1 (W.D. Tenn. July 6, 2011) (citing United States v. Irrorere, 69 F. App'x 231, 236 (6th Cir. 2003)); see United States v. Brown, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007) ("Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment.").

The Court finds no reason to question the Magistrate Judge's assessment. The Magistrate Judge considered Deputy Murray's testimony and credited Detective Fox's testimony that the sweep lasted a few seconds. The Court defers to the Magistrate Judge's credibility assessment about the timeline of the protective search. Lester's objection is OVERRULED.

    **2. Deputy Murray's Conversation with Lester**

The Magistrate Judge found that, after Deputy Murray discovered the bag of cocaine in Lester's pocket, Deputy Murray asked Lester whether "he had anything else on [him], drugs or anything that will harm me, stick or harm me." (ECF No. 52 at 4.) Lester responded that there was "just some weed in the room." (Id.) Lester objects to the Magistrate Judge's

7

proposed finding and argues that the finding of fact should be taken from Detective Lee's affidavit for the search warrant. (ECF No. 55 at 2.)  That affidavit states that "Detectives asked Lester if he had any more drugs on his person to which he stated 'there's some weed in the room . . . .'"  (ECF No. 37-4.)  Lester argues that the affidavit shows that Deputy Murray asked Lester about drugs, not whether he had anything that could harm him.

Lester's objection is not well taken.  Detective Lee wrote the affidavit after speaking with Deputy Murray on the scene.  At the Hearing, Detective Lee could not recall what Deputy Murray had told him.  The Magistrate Judge credited Deputy Murray's testimony that he asked Lester whether he "had anything else on [him], drugs or anything that will harm me, stick or harm me."  The Court defers to the Magistrate' Judge's credibility assessment.  The objection is OVERRULED.

### 3. Shelby County Department Policy

Detective Zuck photographed Room 110 as part of the search.  The photos begin with a timestamp of 13:47, which would indicate the search began at 1:47 p.m.  However, Detective Zuck testified that the timestamp was incorrect by an hour due to Daylight Savings Time.  (T. 168.)  He also affirmed that it is Department practice to not alter any settings or

8

stored photos on the camera to preserve the chronology of every picture taken. Lester objects to Detective Zuck's testimony about the chronology of the photos and Department policy. Lester does not offer evidence to contradict Detective Zuck's testimony. Lester's objection is OVERRULED.

### 4. Timing of the Search

One of Detective Zuck's photographs showed that the search warrant was signed at 2:22 p.m. The Magistrate Judge found that this indicated the search did not begin until after 2:22 p.m. Lester objects to the proposed fact, arguing it is irrelevant because it does not speak to whether a search occurred before the officers obtained the search warrant. The fact is not irrelevant. It corroborates the officers' timeline of when the search occurred. Lester's objection is OVERRULED.

Lester's objections to the proposed findings of fact are OVERRULED. The proposed findings of fact are ADOPTED.

### B. Objections to Conclusions of Law

As part of the Report, the Magistrate Judge made the following conclusions of law: (1) the protective sweep was lawful; (2) Lester's Fifth Amendment rights were not violated; (3) the plain view doctrine applies to the digital scale; and (4) even if Lester's Fifth Amendment rights were not violated, officers had an independent source for the search warrant.

9

Lester objects to the four findings of law. (ECF No. 55.) Lester also argues that the affidavit in support of the search warrant application contained a material misstatement, the Magistrate Judge erred in crediting the officers' testimony, and the officers violated the Rule of Sequestration during the Hearing. (Id.)

### 1. The Protective Sweep

"An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." United States v. Pruitt, 458 F.3d 477, 482 (6th Cir. 2006) (quoting Payton v. New York, 445 U.S. 573, 603 (1980)). An arrest warrant does not justify a general search of the premises. United States v. Stover, 474 F.3d 904, 911 (6th Cir. 2007). To enter and search, officers must obtain a separate search warrant or support their warrantless entry with "some independent exception to the warrant requirement." El Bey v. Roop, 530 F.3d 407, 420 (6th Cir. 2008).

The protective sweep is one exception. There are two types of protective sweep. The first allows a sweep of "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Maryland v. Buie, 494 U.S. 325, 334 (1990)). Officers do not need probable cause or a reasonable suspicion to conduct this kind of sweep. United

10

States v. Archibald, 589 F.3d 289, 295 (6th Cir. 2009). The second allows a search "beyond immediately adjoining areas" and requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the scene." Id. The Government did not explicitly say which type of Buie sweep the officers conducted. The Magistrate Judge interpreted the Government to argue that the officers executed a type-one Buie sweep and found the sweep lawful. (ECF No. 52 at 16.)

The Court agrees with the Report. The officers entered Room 110, immediately swept the bathroom, and came out. The sweep lasted a few seconds. Room 110 was a small room with no door separating the sink area from the main room. The bathroom adjoined the place of arrest and was a place from which an attack could have been launched. See United States v. Kaler, 11 F. App'x 400, 402 (6th Cir. 2001) (finding it reasonable to sweep a bathroom immediately adjoining the motel room without probable cause or reasonable suspicion).

Lester argues that the sweep was the second type, and therefore unlawful because the officers had no specific, articulable facts that another dangerous person was still inside the hotel room. To support his argument, Lester relies on Deputy Murray's testimony that the protective sweep lasted a couple of

11

minutes. Lester contends that a type-one Buie sweep could not have lasted that long. The Court has adopted the Magistrate Judge's finding of fact that Detective Crynor went "immediately past the bed into the room where there was a bathroom, and then [] came out." (ECF No. 52 at 5.) That fact supports the conclusion that the officers conducted a type-one protective sweep.

Lester compares the case to Archibald, where the Sixth Circuit stated that officers' actions did not amount to a type-one Buie search. 589 F.3d at 297. There, the officers arrested Archibald at the threshold of the door. Id. The Sixth Circuit ruled that arrests made at doorsteps, front porches, and doorways are outside arrests under the Buie analysis. Id. In such situations, an indoor protective sweep must be justified by an officer's reasonable belief that a dangerous third party is present. Id. It is undisputed that officers arrested Phillips inside the hotel room. (ECF No. 52. at 3-4.) The doorway exception in Archibald does not apply here.

Lester's objection is OVERRULED. The recommendation about the protective sweep is ADOPTED.

    **2.   Pre-Miranda Questioning**

Lester argues that Deputy Murray violated Lester's Fifth Amendment rights by questioning him without advising him of his Miranda rights. (ECF No. 55 at 9.) The Fifth Amendment provides

12

that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A person subjected to custodial interrogation must be notified of his right against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). Questioning that follows a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest" is typically considered a custodial interrogation. United States v. Malcolm, 435 F. App'x 417, 420 (6th Cir. 2011) (quoting California v. Beheler, 463 U.S. 1121, 125 (1983)). Deputy Murray arrested Lester and patted him down. After Deputy Murray had found a bag of cocaine, he asked Lester if he had anything that could hurt him. Deputy Murray had not yet read Lester his Miranda rights when he asked the question. The Magistrate Judge ruled that the question did not violate Miranda because it fell under the public safety exception. (ECF No. 52. at 18.)

The public safety exception allows officers to ask questions before Miranda if they are necessary to secure the officer's safety or the safety of the public. United States v. Williams, 483 F.3d 425, 428 (6th Cir. 2007) (citing New York v. Quarles, 467 U.S. 649, 659 (1984)). The exception applies "when officers have a reasonable belief based on articulable facts that they are in danger." United States v. Talley, 275 F.3d 650, 563 (6th Cir. 2001). The reasonable belief inquiry is objective and

13

considers factors like the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer when he undertakes the arrest. Williams, 483 F.3d at 428. For the public safety exception to apply, the officer "must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." Id.

The Magistrate Judge found that the Deputy Murray's question about whether Lester had "anything else on [him], drugs or anything that will harm me, stick or harm me" fell within the public safety exception, relying on United States v. Mohammed, 501 F. App'x 431, 444 (6th Cir. 2012). In Mohammed, an arresting officer asked the defendant whether "he had any weapons, drugs, or anything sharp that would stick him" before he conducted a pat down and before he administered Miranda warnings. Id. at 443. The Sixth Circuit found it reasonable for the officer to believe that Mohammed had a readily accessible weapon because he was a known heroin dealer. Id. at 444. The Court then held that the officer's question about whether Mohammed had drug paraphernalia on his person that could harm the officer in conducting a pat down stemmed from an objectively reasonable concern for the officer's safety. Id.

14

The Magistrate Judge acknowledged that Mohammed did not squarely answer the question presented here: "whether an officer's question about drugs on a suspect's person, in conjunction with questions about weapons or harmful objects, during a pat down incident to arrest is within the public safety exception to Miranda." (ECF No. 52 at 21.) The Magistrate Judge found the question to be within the public safety exception for three reasons.

First, the unique facts of the case and the timing of the question helped to assure that the arresting officer's question was limited in scope and was not posed to elicit incriminating evidence. (Id. at 22.) Deputy Murray's question came after he had begun patting down Lester and after he found a bag of suspected crack cocaine on his person. That made it objectively reasonable to believe Lester might have had other narcotics equipment that could harm Deputy Murray, like needles or other sharp objects, on his person. (Id.) Second, Deputy Murray's phrasing cabined the question to his own safety. (Id.) The question, "do you got anything else on you, drugs or anything that will harm me, stick or harm me?" was limited only to things on Lester's person that could harm Deputy Murray as he conducted the pat down, meaning Deputy Murray was likely to discover them whether or not he asked the question. (Id.) Third, Deputy Murray did not follow up after Lester responded that there was

15

"some weed in the room." (Id. at 23.) That heightened the Magistrate Judge's confidence that the question was a reasonable attempt by Deputy Murray to ensure his personal safety during the search. (Id.)

Lester argues that Deputy Murray's question does not fall under the public safety exception for several reasons, all of which are unpersuasive. First, Lester argues there was no information that he was a drug dealer, so it was objectively unreasonable for Deputy Murray to think Lester had anything that could harm Murray on Lester's person. (ECF No. 55 at 12.) Although Lester was not a known drug dealer at the time of his arrest, Deputy Murray began the pat down and found a plastic bag containing a rock-like substance and a $869 on Lester's person. Only then did Deputy Murray ask if Lester had any drugs or anything else that could harm Murray. Lester was wanted for aggravated assault with a firearm. It was objectively reasonable for Deputy Murray to believe that Lester could have had something on his person that could have hurt Murray.

Lester then argues that Deputy Murray's question was not about whether the drugs could harm Deputy Murray because the question used disjunctive phrasing. (Id.) Deputy Murray asked if Lester had "drugs *or* anything that will harm me, stick or harm me?" According to Lester, the use of "or" is disjunctive, meaning that Deputy Murray asked independently whether Lester

16

had "drugs" or "anything that will harm" Murray. Deputy Murray's question is better interpreted as asking whether Lester had any drugs or drug paraphernalia, like razor blades or hypodermic needles. See Mohammed, 501 F. App'x at 444; see also United States v. Reyes, 353 F.3d 148, 152-53 (2d Cir. 2003) (describing razor blades and needles as "'tools of the drug trade' regularly found on narcotics traffickers"). Whether Deputy Murray used disjunctive phrasing is not dispositive.

Finally, Lester argues that Deputy Murray's belief in danger was not objectively reasonable because he had not been harmed from past searches involving contact with illegal drugs. (ECF No. 55 at 12.) Past harm is not a prerequisite for the reasonable objective belief that an officer could be harmed. That Lester was wanted for aggravated assault and had drugs on his person made it reasonable for Deputy Murray to believe that Lester had something on his person that could harm Murray during the pat down. Deputy Murray's question falls under the public safety exception to Miranda. Lester's objection is OVERRULED, and the recommendation is ADOPTED.

### 3. Plain View

Lester contends that, because the protective sweep was invalid, the officers were not legally in position to see the digital scale and the plain view doctrine is inapplicable. "It is well established that under certain circumstances the police

17

may seize evidence in plain view without a warrant." Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). Four factors must be satisfied for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object. Horton v. California, 496 U.S. 128, 136-137 (1990) (internal citations omitted).

Lester's objection is not well taken. There is no dispute that the digital scale was in plain view. The protective sweep was legal, and the officers had the authority to be in the room. A digital scale sitting on a motel room nightstand has an immediately apparent incriminating nature. The officers had the right to access the scale after executing the search warrant. All four factors are satisfied. Lester's objection is OVERRULED.

### 4. Independent Source

The Magistrate Judge found that, even if Deputy Murray's question violated Lester's Fifth Amendment rights, the evidence obtained from Room 110 should be admitted under the independent source doctrine. The exclusionary rule generally bars the admissibility of items seized during an unconstitutional search. United States v. Leake, 95 F.3d 409, 411 (6th Cir. 1996). Evidence discovered through an illegal search may still be

admitted if the Government can show that the evidence would have been discovered independent of any constitutional violation. Id. (citing Nix v. Williams, 467 U.S. 431, 442-43 (1984)). The Court adopted the recommendation that Lester's Fifth Amendment rights were not violated. The objection is OVERRULED.

### 5. Material Misstatement in the Affidavit

Lester argues that the search warrant contained a material misstatement. The affidavit accompanying the search warrant said that agents arrived at the Villa Inn as a result of information from an anonymous source. At the Hearing, Deputy Murray testified that he received the information from a confidential source. Lester argues that he is entitled to a Franks hearing because of this discrepancy. See Franks v. Delaware, 438 U.S. 154 (1978). Whether Deputy Murray received the information from an anonymous source or a confidential source is immaterial. The objection is OVERRULED.

### 6. Credibility

Lester again argues that the Magistrate Judge erred in finding the officers' testimony credible, alleging several discrepancies in their testimonies. Those discrepancies are trivial and irrelevant. The Magistrate Judge's credibility determination is entitled deference. Irrorere, 69 F. App'x at 236. The objection is OVERRULED.

19

7. **Rule of Sequestration**

The Rule of Sequestration was called at the suppression hearing. (T. 22.) Detective Lee spoke with other officers outside the courtroom. Lester alleges that Detective Lee was speaking about the case with the other officers. Detective Lee denied this at the Hearing. (T. 128.) Lester has put forth no evidence that Detective Lee was talking about the case. The objection is OVERRULED.

**IV. Conclusion**

For the foregoing reasons, the Report is ADOPTED. The Motion is DENIED.

So ordered this 28th day of July, 2022.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE